# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,               :        Case No. 2:19-cr-107

    v.                                Judge Sarah D. Morrison
                                  :

CHRISTOPHER SAMMONS,

    Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's Motion to Revoke Detention Order. (ECF No. 28.) In his Motion, Mr. Sammons asks the Court to order that he be released with conditions pending trial. The Government responded (ECF No. 30), requesting that the Court affirm the Magistrate Judge's detention order. Having considered the evidence presented *de novo*, and for the reasons that follow, the Court agrees with the Magistrate Judge's findings of fact and conclusions of law and finds a hearing to be unnecessary. Accordingly, the Court **DENIES** Defendant's Motion.

## I.    FACTUAL ALLEGATIONS

Based on the Affidavit in Support of Criminal Complaint, and on the Government's representation of the facts in its opposition memorandum, the factual allegations underlying the Indictment are as follows. In March 2019, Mr. Sammons began to communicate with an undercover agent (the "UCA") from the Federal Bureau of Investigation ("FBI") via a cell phone app called Kik Messenger ("Kik"). Mr. Sammons described to the UCA how he had been sexually abusing a young female relative, Jane Doe, including through the use of sex toys. He told the UCA that he had recorded some of this sexual activity but that he had not saved any of

1

these recordings "just incase [sic] you know." Mr. Sammons did, however, send the UCA several videos depicting other sexual activity involving children, as well as photographs of Jane Doe in a bathing suit.

On March 20, 2019, Mr. Sammons told the UCA that he was going to be babysitting Jane Doe the following week on March 28 and March 29 and that he would record a video of himself sexually abusing Jane Doe during that time. Mr. Sammons agreed to send this video to the UCA in exchange for a video of the UCA sexually abusing one of his own minor family members.

The UCA passed this information along to Brett Peachey, an FBI task force officer ("TFO"). A few days later, TFO Peachey began to engage Mr. Sammons in similar conversations via Kik as the UCA did. Mr. Sammons described to TFO Peachey how he had been sexually abusing Jane Doe for approximately one year, and he confirmed his intent to abuse her in a few days' time. Mr. Sammons offered to send TFO Peachy pornographic videos or pictures of Jane Doe.

On March 28, before Mr. Sammons gained access to Jane Doe, a search warrant was executed on his home. The search recovered Mr. Sammons's cell phone and sex toys consistent with those described by Mr. Sammons. During the search warrant, law enforcement interviewed Mr. Sammons, and he admitted that he had distributed child pornography online, sexually abused Jane Doe for approximately one year, and created and distributed child pornography depicting Jane Doe.

A forensic examination of Mr. Sammons's cell phone showed that the phone contained the Kik app but that the app was hidden so that it could not be easily located. The phone also contained only a limited number of Kik conversations, and some of the conversations between

2

Mr. Sammons and the two law enforcement agents were missing. The phone did not contain any child pornography.

Law enforcement subsequently interviewed members of Jane Doe's family, who confirmed that she was five years old and that she was scheduled to sleep over at Mr. Sammons's house on March 28. These family members also confirmed that Jane Doe would be alone with Mr. Sammons the following morning after his wife went to work. Jane Doe has not disclosed any abuse.

**II.    PROCEDURAL HISTORY**

On April 5, 2019, Mr. Sammons was charged in a criminal complaint with Making a Notice for Child Pornography, in violation of 18 U.S.C. §§ 2251(d)(1)(A) & (B), and Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252A(a)(2). After being arrested pursuant to a warrant signed by Magistrate Judge Deavers, on April 8, 2019, Mr. Sammons had an initial appearance before Magistrate Judge Deavers. (ECF No. 3.)

On April 17, 2019, Mr. Sammons appeared before Magistrate Judge Deavers for a detention hearing. (ECF No. 11.) During this detention hearing, the Government rested on the evidence in the Affidavit in Support of Criminal Complaint and in the pretrial services report. Mr. Sammons presented evidence of his military service, including commendations and awards. He also introduced an award of excellence from his now-former employer and proffered that if he were released on bond, his former employer had agreed to re-hire him "pending the dust settling down." Mr. Sammons's wife testified that she stood behind her husband and that he was welcome back in her home. She testified that the two of them lived with her father and that if her husband were released on bond, there would be no children in the home. She also testified that

there would never be a time when he would be home alone. Ms. Sammons testified that her husband's income was necessary to financially support herself and her father.

The Government argued that Mr. Sammons's military background and wife's support were not sufficient to rebut the statutory presumption that no condition or combination of conditions could reasonably assure Mr. Sammons's appearance and the safety of the community, particularly in light of the egregious nature of the offense. The Government highlighted that Mr. Sammons was able to sexually abuse Jane Doe over approximately one year without his wife, his family, or law enforcement catching on and that he was able to prevent evidence of his alleged crimes from being found on his phone even by trained forensic examiners.

Mr. Sammons relied on the fact that there was no "physical corroboration" of the alleged crimes and that Jane Doe denied that any abuse had happened. Mr. Sammons argued that what the Government painted as concealment of evidence was actually a dearth of evidence. Mr. Sammons also highlighted his military history and how he is trained to follow orders.

After hearing the evidence and arguments, the Magistrate found that Mr. Sammons's evidence was insufficient to overcome the statutory presumption. The Magistrate found that the weight of the evidence was "quite strong" and that Mr. Sammons had incentive to flee given his sentencing exposure. The Magistrate also found that Mr. Sammons admitted to sexually abusing Jane Doe when she was as young as four years old and that he had sent child pornography to individuals via the internet, which gave rise to safety concerns for Jane Doe and for the broader community. Accordingly, the Magistrate ordered that Mr. Sammons be detained pending trial.

On April 23, 2019, a grand jury returned an indictment charging Mr. Sammons with one count of Sexual Exploitation of a Minor, in violation of 18 U.S.C. §§ 2251(a) & (e); one count of Making a Notice for Child Pornography, in violation of 18 U.S.C. §§ 2251(d)(1)(A) & (e);

Making a Notice for Child Pornography, in violation of 18 U.S.C. §§ 2251(d)(1)(B) & (e); and one count of Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1).

On January 28, 2020, Mr. Sammons filed a Motion for Bond to which the Government subsequently responded. Mr. Sammons's motion presents substantially the same information as he presented at the original detention hearing. The only new information that Mr. Sammons presents is his contention that if he were released on bond, he would live with his mother-in-law in St. Louisville, Ohio, rather than with his wife. He also argues that while the Government has attempted to strengthen its evidence, it has not been successful. The Government relies on substantially the same information and arguments as the original detention hearing.

## III. LEGAL STANDARD

There is a rebuttable presumption in cases involving particularly serious crimes that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community . . . ." 18 U.S.C. § 3142(e)(3) (2018). This includes child exploitation cases. *Id.* § 3142(e)(3)(E). Where the government presents an indictment including charges identified in § 3142(e)(3), "it has fulfilled its burden" and can invoke this presumption. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Once the presumption is invoked, the defendant has the burden of production, although the burden of persuasion remains on the Government. *Id.* The defendant satisfies this burden by identifying evidence that he is not a danger to the community or a risk of flight. *Id.* While this is not a heavy burden, the defendant "must introduce at least some evidence." *Id.* Even once the defendant meets that burden, the presumption remains a factor to be weighed by the Court in considering the appropriateness of bond. *Id.*

"Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *Id.* at 946. A finding that no combination of conditions can reasonably assure the safety of the community must be made by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding of risk of flight need only be proven by a preponderance of the evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). In considering the appropriateness of bond, the Court must consider the nature and circumstances of the offense, including whether the crime involves a minor victim; the weight of the evidence; the defendant's history and characteristics; and the nature and seriousness of the defendant's danger to any person or the community. 18 U.S.C. § 3142(g).

When a magistrate judge issues a detention order pursuant to § 3142, a defendant may request that that order be reviewed by the district court. *Id.* § 3145(b). The district judge reviews that order *de novo*. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1130 (S.D. Ohio 2000). While the district court is obligated to review the magistrate's determination, the district court need not hold a hearing. *See, e.g.*, *United States v. Romans*, No. 00-5456, 2000 WL 658042, *1 (6th Cir. May 9, 2000) (affirming district court review without a hearing); *United States v. Oaks*, No. 19-1342, 2019 WL 5692529, at *2 (10th Cir. Nov. 4, 2019) ("A district court conducts a de novo review of a magistrate judge's detention order, but there is no statutory requirement that the court hold a hearing." (internal citations omitted)); *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003) ("[Section] 3145 does not require that new information be available before a release or detention order can be reconsidered and revoked."); *United States v. Reuben*, 974 F.2d 580, 585 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent

determination of the proper pretrial detention or conditions for release."); *United States v. Portes*, 786 F.2d 758, 761 (7th Cir. 1985) (noting that Bail Reform Act established a two-tier review process for detention orders issued by magistrates, the first level of which occurs in the district court); *United States v. Williams*, 753 F.2d 329, 334 (4th Cir. 1985) ("[I]n most cases, a trial court's review of a transcript of proceedings would, either as part of a *de novo* detention hearing, or as part of a review of a detention order under 18 U.S.C. § 3145(b) be sufficient to withstand appellate review.").

## IV. ANALYSIS

The Court has evaluated *de novo* the Magistrate's detention order after reviewing the Pretrial Services Report, the recording of the original detention hearing, and all briefing and evidence submitted to the Court. Pursuant to the factors outlined in 18 U.S.C. § 3142(g), the Court makes the following findings.

### A. Nature and Circumstances of the Offenses Charged

Mr. Sammons is charged with an egregious offense involving disturbing allegations. The Indictment charges Mr. Sammons with sexually abusing a five-year-old relative for approximately one year. The allegations include that Mr. Sammons bragged to law enforcement agents about how he groomed and abused the child and how he manipulated her into engaging in various sexual acts. Mr. Sammons is also accused of advertising and distributing child pornography. It is alleged that he sent child pornography to the UCA and that he encouraged the UCA to sexually abuse a child and to send him pornographic evidence of that abuse.

The allegations also include that Mr. Sammons frequently created pornographic videos featuring Jane Doe. His conversations with the law enforcement agents indicated his intent to continue to create these videos and distribute them to others via the internet. Such videos could

7

then be trafficked via the internet in perpetuity. *See Paroline v. United States*, 572 U.S. 434, 440 (noting continued distribution of child pornography involving one particular victim, "Amy," whose images have been possessed by thousands). At that point, the bell can never be unrung. Not to mention that Mr. Sammons allegedly distributed child pornography featuring other children, perpetuating the abuse that those children were made to suffer. *See New York v. Ferber*, 458 U.S. 747, 759 (1982) ("[T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.").

The charges allege that the defendant preyed on one of the most vulnerable victims in society, a small child, and did so by taking advantage of his familial relationship with her. The serious nature of the offenses charged and the alarming nature of the facts underlying them weigh heavily in favor of detention.

    **B.**     **Weight of the Evidence**

In this circuit, "[t]his factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. This factor is the least important factor. *United States v. Walls*, No. CR 2-06-192, 2008 WL 213886, at *2 (S.D. Ohio Jan. 23, 2008) (citing *United States v. Matomedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)).

Given the facts alleged—and their inherent dangerousness—the weight of the evidence of dangerousness is inextricably intertwined with the weight of the evidence as to the crime alleged. This is particularly true given that there is no evidence that Mr. Sammons presents a danger to the community outside of his allegedly prurient interests and sexual predation. Mr. Sammons relies heavily on this factor, arguing that there is a "dearth of evidence." (ECF No. 28, at 2.) The

Government acknowledges gaps in its evidence, namely that Jane Doe has not disclosed any abuse[1] and that there was no child pornography found on Mr. Sammons's phone.

Even setting aside that this is the least important factor, the Court finds the evidence of dangerousness to be weighty. There is substantial evidence that Mr. Sammons has distributed child pornography. He admitted to doing so, and he also sent child pornography to the UCA. This in turn is substantial evidence that Mr. Sammons is a pedophile. *See*, *e.g.*, Michael C. Seto et al., Explanations Given by Child Pornography Offenders for Their Crimes, 16 J. Sexual Aggression 169, 175 (2010) (noting the high percentage of child pornography offenders who admit to having a sexual interest in children); Michael L. Bourke & Andres E. Hernandez, The 'Butner Study' Redux: A Report of the Incidence of Hands-On Child Victimization by Child Pornography Offenders, 24 J. Fam. Violence 183, 185 (2009) ("[O]nly a very small minority of offenders (e.g., psychopaths) who commit child pornography crimes are motivated by non-sexually deviant interests; rather, most are motivated by a pre-existing sexual interest in minors."); Michael C. Seto, James M. Cantor & Ray Blanchard, Child Pornography Offenses Are a Valid Diagnostic Indicator of Pedophilia, 115 J. Abnormal Psychol. 610, 612–13 (2006) (finding that child pornography offenders were more likely than contact-only offenders to demonstrate physical sexual attraction to children). It is also substantial evidence of the sexual abuse allegations, for various studies have found that child pornography offenders have often committed contact sexual offenses. *See* Online Child Pornography: Hearing Before the S. Comm. on Commerce, Sci., & Transp., 109th Cong. 56 (2006) (interrogatory responses of Sharon W. Cooper, M.D., Adjunct Professor of Pediatrics, Chapel Hill Sch. Of Med., Univ. of N.C.) (citing studies by U.S. Postal Inspections Service and U.S. Customs Service).

---

[1] The Magistrate stated at the original detention hearing that she puts little stock in the denials of a five-year-old child. The Court concurs.

Mr. Sammons also admitted that he sexually abused Jane Doe. While there is no other direct evidence to support this charge, there is significant circumstantial evidence. For example, aspects of the stories that Mr. Sammons told the law enforcement agents were corroborated by items recovered in the search warrant and by interviews with the child's family.

Finally, there is the issue of the gaps in the evidence. Where Mr. Sammons ascribes lack of guilt as the reason, the Government considers this to be evidence of Mr. Sammons's sophistication and consciousness of guilt. The evidence supports the Government's argument. If the Government's allegations are to be believed, Mr. Sammons sexually abused a child for approximately one year without his wife, the child's family, or law enforcement finding out. Moreover, Mr. Sammons himself offered an explanation for why no child pornography was found on his phone—in his words, as relayed by law enforcement, he deleted those recordings "just in case." The meaning of those words—just in case law enforcement were to come knocking—is obvious. And Mr. Sammons's desire and ability to cover his tracks is further evidenced by the indisputable fact that some of the known conversations with law enforcement via the Kik app were missing from his phone after it was seized. Those conversations (and who knows what else) remain unrecoverable even with the best tools that the FBI has to offer. This is evidence of Mr. Sammons's dangerous willingness and ability to conceal evidence of criminal activity.

All of this is significant evidence that Mr. Sammons is a danger to Jane Doe and to the broader community. Mr. Sammons says that if he is released, he will be living with his mother-in-law "far away from the alleged victim or any other minors, and without any internet access." (ECF NO. 28, at 3.) The Court gives no credence to these assurances. For one, Mr. Sammons offers no evidence in support of his assertions (e.g., that he would not be around minors). For

another, a sophisticated actor, which the evidence demonstrates Mr. Sammons is, can always find a way to accomplish nefarious goals and can do so without others catching on.

The Court also notes, as did the Magistrate, that Mr. Sammons is facing significant prison time. If he is convicted on Counts One, Two, or Three, he faces a minimum of fifteen years in prison and potentially many more. 18 U.S.C. § 2251(e) (2018). The Court agrees with the Magistrate that facing such significant penalties amplifies the risk of flight. Moreover, as is discussed below, Mr. Sammons has a reputation in the community, particularly due to his service in the Army. The shame of the allegations that he is facing is also an immense incentive to flee.[2]

The second § 3142(g) factor weighs in favor of detention.

**C.  History and Characteristics of the Person**

As to Mr. Sammons's history and characteristics, the evidence supports the idea that he led a blameless life until the conduct that led to the instant charges. He has been married since 2011. Until April 2019, he had a good job as an account manager at TBHC Delivers. He was in the United States Army where he received commendations and awards and was deployed to Afghanistan in 2013. He remains in the United States Army Reserves. This all speaks well of Mr. Sammons. But the Indictment alleges that Mr. Sammons was leading a secret life alongside all of this. As a result it is difficult to put too much stock into Mr. Sammons's positive history and characteristics.

Moreover, to the extent that Mr. Sammons seeks to attack the allegations by relying on his military service, such arguments are not persuasive. Child pornography offenders are often pillars of their community. Ethel Quayle, The Impact of Viewing on Offending Behaviour, in

---

[2] Mr. Sammons offers up that he will be living with his mother-in-law in rural Ohio, presumably as evidence that he will pose less of a danger in this environment. For the reasons explained, the Court doubts that that is true. Regardless, this would *increase* his risk of flight because it would be much more difficult to monitor Mr. Sammons and ensure his compliance in a remote environment with fewer watchful eyes.

11

Child Sexual Abuse and the Internet: Tackling the New Frontier, 25, 25 (Martin C. Calder ed., 2004). They are often well-educated and "well integrated in . . . society." Jérôme Endrass et al., The Consumption of Internet Child Pornography and Violent and Sex Offending, 9 BMC Psychiatry 43, 5 (2009). When the FBI initiated a large crackdown on child pornography in 2002, arrested individuals included "Little League coaches, a teacher's aide, a guidance counselor, school bus driver, foster care parent and professionals in the medical, educational, military and law enforcement fields." Press Release, Fed. Bureau of Investigation, Operation Candyman (Mar. 18, 2002), available at http://www.fbi.gov/news/pressrel/press-releases/operation-candyman. Given this, the Court finds Mr. Sammons's military service to be irrelevant and gives little credence to the third § 3142(g) factor.

### D. Nature and Seriousness of the Danger to any Person or the Community

As explained above, the Court has grave concerns about the danger that Mr. Sammons would pose to Jane Doe and the broader community should he be released. This is especially true because the conduct alleged indicates that Mr. Sammons is a pedophile. And pedophiles have a more limited ability to control their predatory behavior. *See* Candace Rondeaux, Can Castration Be a Solution for Sex Offenders?, Wash. Post, July 5, 2006, at B01, available at http://www.washingtonpost.com/wp-dyn/content/article/2006/07/04/AR2006070400960.html (describing offender who surgically castrated himself while in prison to escape his desires). This is especially true given the ubiquity of the internet. *See* Kelly M. Babchishin et al., The Characteristics of Online Sex Offenders: A Meta-Analysis, 23 Sexual Abuse: J. Res. & Treatment 92, 93 (2011). While Mr. Sammons insists that he would be without any internet access if he were released, there would be no real mechanism to enforce or police this, and the

Court would need to rely on Mr. Sammons's promises to abstain. The Court is not willing to depend on Mr. Sammons's good faith, particularly given the concerning allegations present here.

The minimal evidence that Mr. Sammons presented is not nearly enough to overcome the § 3142(e)(3) presumption, and regardless, there is very strong evidence that Mr. Sammons poses a danger to the community and is a risk of flight. Given the limited additional evidence presented by the parties, the Court finds a new detention hearing to be unnecessary. After reviewing the record *de novo* and weighing the evidence, the Court finds that the Government has proven by clear and convincing evidence that there is no condition or combination of conditions of release that will reasonably assure the safety of Jane Doe and of the community and that the Government has also proven by a preponderance that Mr. Sammons is a risk of flight. 18 U.S.C. § 3142(e). Accordingly, Mr. Sammons will remain detained pending trial.

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Revoke Detention Order. (ECF No. 28.)

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**